# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-1082V
**Filed: November 4, 2016**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  UNPUBLISHED
LYNN HENDERSON,                          \*
                                         \*
                     Petitioner,         \*   Ruling on the Record; Vaccine Act
v.                                       \*   Entitlement; Insufficient Proof of
                                         \*   Causation; Influenza ("Flu")
SECRETARY OF HEALTH                      \*   Vaccine; Occipital Neuralgia
AND HUMAN SERVICES,                      \*
                                         \*
                     Respondent.         \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Richard Gage, Esq., Richard Gage, P.C., Cheyenne, WY,* for petitioner.
*Camille Collett, Esq., U.S. Department of Justice, Washington, DC,* for respondent.

### RULING ON THE RECORD AND DECISION DISMISSING PETITION[1]

**Roth,** Special Master:

On November 5, 2014, Lynn Henderson ["petitioner" or "Ms. Henderson"] timely filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ["Vaccine Act" or "Program"]. The petition alleges that Ms. Henderson suffers from left occipital neuralgia caused by the influenza vaccination that she received on December 1, 2011. Petition at ¶¶ 1, 4. The petition further alleges that Ms. Henderson's injuries persisted for more than six months. *Id.* at ¶ 2, 5.

For the reasons stated herein, I find that the petitioner has failed to establish entitlement

---
[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B).  Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.
[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

to an award and thus, the case is dismissed.

## I. Procedural History.

Petitioner filed her petition and first affidavit on November 5, 2014. She filed twelve exhibits on November 26, 2014. *See generally*, Petitioner's Exhibits ("Pet. Ex.") 1-12.

This case was assigned to now-Chief Special Master Dorsey, who conducted the initial status conference on December 9, 2014.[3] After petitioner filed her Statement of Completion, respondent filed her Rule 4(c) report recommending against compensation. Respondent's Report ["Res. Rpt."], filed May 18, 2015, at 1. In her report, respondent stated that "petitioner's medical records do not document her receipt of the influenza vaccine on December 1, 2011," thus, petitioner cannot satisfy her burden of proof under 42 U.S.C. §§ 300aa-11(c)(1)(A). *Id*. at 14. Petitioner received the flu vaccine while at work, but apparently no record of the vaccine was maintained by the administrator of the vaccine. Respondent also asserted that petitioner's medical records contradicted her assertion that she suffered residual effects from her alleged injury for more than six months. *Id*. at 15. Finally, respondent stated that petitioner had not identified a plausible medical theory which would explain how the influenza vaccine could cause her alleged injury, which is required under *Althen v. Sec'y of Health and Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Res. Rpt. at 17.

Chief Special Master Dorsey held a Rule 5 status conference on July 20, 2015, during which she discussed her preliminary views of the case. It was the Chief Special Master's opinion that, although petitioner had prior neck and back pain, she experienced the onset of a new injury "occurring on or around December 22, 2011, that is separate and distinct" from previous injuries. Order, issued Jul. 20, 2015 [ECF No. 20], at 1. The Chief Special Master also noted that certain affidavits, Pet. Ex. 11 and 14, list the allegedly causal vaccine as "Fluvanal" instead of "FluLaval." *Id*. Petitioner's counsel was ordered to submit corrected affidavits. *Id*. The Chief Special Master issued an order authorizing petitioner's counsel to serve a subpoena on Tippecanoe County Wellness Center in Lafayette, Indiana, in order to obtain proof of vaccination for petitioner. Order, issued Jul. 20, 2015 [ECF No. 21].

Petitioner filed the corrected affidavits and her prescription records, as well as a response from Tippecanoe County Wellness Center stating that petitioner's consent form for the flu vaccine had been destroyed, and the facility no longer had any records relating to petitioner. *See generally*, Pet. Ex. 15-17. Respondent indicated that she was not interested in entertaining settlement discussions without an expert report supporting petitioner's claim. Respondent's Status Report [Res. SR], filed October 5, 2015 [ECF No. 26] at 1. The Chief Special Master then ordered petitioner to file an expert report "addressing the *Althen* criteria" by December 7, 2015. Order, issued October 7, 2015 [ECF No. 27] at 1.

This case was reassigned to me on October 19, 2015. Petitioner repeatedly filed motions for extensions of time to file her expert report. Motion for Extension of Time, filed Dec. 7, 2015; Dec. 23, 2015; Jan. 6, 2016; Jan. 29, 2016; Feb. 29, 2016 [ECF No. 30-34]. Petitioner was

---

[3] Special Master Dorsey was elevated to Chief Special Master on September 1, 2015.

ultimately unable to file an expert report. On March 18, 2016, petitioner filed a motion for a decision on the record. Motion, filed Mar. 18, 2016 [ECF No. 35].

This matter is now ripe for decision.

## II. Relevant Medical History.

### A. Petitioner's Health Prior to the Allegedly Causal Vaccination.

Lynn Henderson was born on September 22, 1959. Before she received the allegedly causal vaccination, she was a nurse practitioner. Pet. Ex. 9 at 1. Petitioner's primary care physician ("PCP"), Dr. Hoshaw, treated her for allergies, arthritis, asthma, depression, hypertension, and chronic neck pain. Pet. Ex. 1 at 118, 130. Petitioner regularly visited her neurologist, Dr. Horton, for treatment of her moderate obstructive sleep apnea. *See generally* Pet. Ex. 9. She also saw Dr. Dicke, an orthopedist, for treatment of degenerative disc disease and osteoarthritis. Pet. Ex. 1 at 130, 134, 142. Petitioner had a history of fibromyalgia, hyperinsulinemia, hypokalemia,[4] kidney stones, cervicalgia, and kyphosis[5] *Id.* at 30, 58, 64, 65, 182. She also had a history of elevated C-reactive protein, though her ANA and rheumatoid factor were negative. *Id.* at 70, 72.

### B. Petitioner's Health after the Allegedly Causal Vaccination.

Petitioner states that she received the allegedly causal vaccination on December 1, 2011, at Tippecanoe County Employee Wellness Center.[6] Pet. Ex. 13 at 1.

She presented to Dr. Collicott on December 13, 2011 for depression and unspecified vitamin D deficiency. No other complaints were raised at that time. Pet. Ex. 5 at 19-20.

On January 12, 2012, petitioner presented to her neurologist, Dr. Horton, complaining of head and neck pain. Dr. Horton noted, "Since Dec 22, has had 'vice over head,' mainly on left side, from temple into neck." Pet. Ex. 9 at 13.

---

[4] Hypokalemia is a lower than normal level of potassium in the bloodstream. Symptoms of hypokalemia may include weakness, fatigue, and muscle cramps. MAYO CLINIC (July 8, 2014) http://www.mayoclinic.org/symptoms/low-potassium/basics/definition/sym-20050632 (Last visited Nov. 3, 2016).

[5] Kyphosis is a forward rounding of the back. While kyphosis can occur at any age, it is most common in older women. Age-related kyphosis often occurs after osteoporosis weakens spinal bones to the point that they crack and compress. MAYO CLINIC (June 6, 2014) http://www.mayoclinic.org/diseases-conditions/kyphosis/basics/definition/con-20026732 (Last visited Nov. 2, 2016).

[6] Petitioner presumptively received the influenza vaccine on December 1, 2011, based on two eyewitness reports. *See generally* Pet. Ex. 15. However, the vaccine was administered at petitioner's workplace as opposed to her primary care provider, and due to poor record keeping at the vaccination site, her vaccination record was lost. Pet. Ex. 16 at 1. Petitioner submitted affidavits of two individuals employed by Tippecanoe County Wellness Center who affirm that they witnessed petitioner receive the flu vaccine on that date. *See* Pet. Ex. 10, 11.

On January 15, 2012, petitioner presented to the emergency department ("ED") at St. Vincent Frankfort Hospital, complaining of "burning on scalp," "numbing/tingling on scalp," "ear pain," and "pain all over." Pet. Ex. 4 at 53. Petitioner stated that her complaints "started 22nd of Dec." *Id*. Petitioner was discharged on January 16, 2012. *Id*. at 64.

On January 16, 2012, petitioner presented to Indiana University Health Lafayette ("IUHL") for a follow-up examination after her visit to the emergency room. Pet. Ex. 3 at 27. It was noted that she had an onset of pain on the left lateral angle of the eye, where the upper and lower lids meet ("lateral canthus") on December 22, 2011. Over the ensuing days it spread to the outer part of the left ear ("pinna") and left cheek. *Id*. It was noted that petitioner had "shingles rash 6 months ago down the back of the L neck. She has had some numbness along the jaw." *Id*. at 27. She was noted to have "facial pain. ?herpetic. Eye exam normal." She was prescribed Acyclovir 800. *Id*. That same day, petitioner underwent an MRI of the brain which was normal. Pet. Ex. 1 at 181.

On January 19, 2012, petitioner presented to Dr. Collicott. He noted that she "continues to have facial numbness, pain goes up to left ear; left temporal pain. Has been ongoing x 4 weeks." Pet. Ex. 5 at 24. She complained of "Lt facial pain and numbness, put on acyclovir by ophthalmologist." *Id*. On physical examination she was noted to have "diminished grimace" of her left face, "able to close OS." *Id.* at 25. He diagnosed her with Bell's palsy and prescribed prednisone, Neurontin, Tylenol #3, and moisturizing eye drops, and instructed her to follow up with a neurologist in one week. *Id*.

On January 20, 2012, petitioner underwent an intracranial head MR angiogram without gadolinium. Pet. Ex. 3 at 32. There were no significant incidental findings. However, there was a "persistent (fetal) carotid to vertebrobasilar anastomosis between the precavernous portion of the left internal carotid artery and the basilar artery (i.e. persistent trigeminal artery)."[7] *Id*. An extracranial MR angiogram of the neck showed "possible stenosis left subclavian artery." *Id*. at 35. It was suggested that petitioner "consider a CT angiogram of the neck for further evaluation." *Id*. Brain MRIs were performed both with and without gadolinium, revealing an "essentially normal study." *Id*. at 30-31.

On January 24, 2012, petitioner saw Dr. Bremer with a variety of concerns. She was noted to have "persistent pain in the left side of the head and temple with a past several weeks (sic)…The patient is being treated for trigeminal neuralgia and is currently on Neurontin. She was evaluated for temporal arteritis and had a normal sedimentation rate. She has had a history of fibromyalgia in years past…no recent fevers or chills. Because of left sided facial pain she was treated with (sic) possible herpes zoster with Valtrex. She has no skin lesions…She also thought she was having possible symptoms of a stroke some 3 weeks ago and was in the emergency room and had an imaging study that was apparently normal." Pet. Ex. 3 at 24-25. Dr. Bremer recommended "Stop the use of nasal spray…No ENT source noted for her left sided

---

[7] Persistent trigeminal artery occurs when the trigeminal artery, an embryonic carotid-vertebrobasillar anastomosis, persists into adulthood. It is associated with vascular malformation, cerebral aneurysm, and trigeminal neuralgia. Licia Pacheco Pereira et al., *Persistent trigeminal artery: angio-tomography and angio-magnetic resonance finding*, 67 ARQ. NEURO-PSIQUIATR, 882-85 (2009).

atypical facial pain." *Id*. at 27.

On January 28, 2012, petitioner presented to a cardiologist, Dr. Yaacoub, upon referral from her PCP "for evaluation of recurrent headache and elevated blood pressure. The patient's symptoms started on 12/22/11. She has been experiencing frequent episodes of left temporal headache with tingling sensation of the face. She has undergone neurology evaluation by Dr. Sam Horton. MRA and MRI were unremarkable. She has occasional episodes of palpitation. She denies any symptoms of chest pain, orthopnea, paroxysmal nocturnal dyspnea, near syncope or syncope." Pet. Ex. 6 at 1. Dr. Yaacoub's impression was "Hypertension – uncontrolled; Palpitation; Headache – unclear etiology and Facial numbness/hyperacusis" (hypersensitivity to sound). *Id* at 2. Petitioner was advised to continue with her medications, obtain a ZIO patch,[8] start metoprolol at 25 mg and return in a month. *Id*. She was also referred to a consult with Dr. Saunders. *Id*.

Two days later, on January 30, 2012, petitioner presented to Dr. Horton complaining of "intermittent numbness in the left face, involving the pinna. Also, feels like muscle tightening and fasciculations…worsens throughout the day, sleep makes it better…Had flu shot a couple months ago, and was around sick patients. Has some tightness in her neck. Feels 'off.'" Ex. 9 at 27. Dr. Horton noted petitioner's "left sided numbness, facial pain and headache, and neck pain. Her exact diagnosis remains uncertain despite multiple evaluations and studies," and that her symptoms "could be cervicogenic, or related to postvaccine demyelination syndrome." *Id*. at 29.

On February 7, 2012, petitioner presented to her dentist, Dr. Reef, complaining of "constant pain in the implant area…Been having problems since Dec 2011." Pet. Ex. 2 at 2. She returned on February 10, 2012, when Dr. Reef noted "Could possibly be a TMJ problem?" *Id*.

On February 14, 2012, petitioner presented to her neurologist, Dr. Horton complaining of "temporal pain." Pet. Ex. 9 at 33. Dr. Horton noted that petitioner was still experiencing "numbness and tingling…in left face, but not as intense. Has some tightening in the left jaw. Feels shaky all over, like 'fight or flight' syndrome." *Id*. An EMG/NCS performed on that date revealed an "abnormal study showing 1. A mild left median neuropathy at the wrist (carpal tunnel syndrome)" and "2. A chronic left C7 radiculopathy, without any electrodiagnostic evidence of active or ongoing denervation." *Id*. at 31-32.

Later that day, petitioner presented to the emergency department at Franciscan St. Elizabeth, complaining of jaw pain radiating down her left arm and palpitations. Pet. Ex. 12 at 14, 20-23. A chest x-ray performed showed "mild interstitial lung disease. Mild airspace disease, right upper lobe," but "no acute osseous or soft tissue abnormality" and "no pneumothorax." *Id*. at 28. Petitioner was discharged that same day, with instructions to "push fluids, rest" and "return if worse." *Id*. at 16.

---

[8] A ZIO patch is a wire free ambulatory electrocardiogram device. It is worn for up to 14 days for continuous cardiac monitoring, and features a button that allows the wearer to capture symptomatic events. Amal Mattu, MD, FACEP, *ZIO XT Patch Cardiac Monitoring Device May Be Good Option for Evaluating Possible Dysrhythmias*, ACEP NOW (June 10, 2014) http://www.acepnow.com/article/zio-xt-patch-cardiac-monitoring-device-may-good-option-evaluating-possible-dysrhythmias/ (Last visited Nov. 3, 2016).

On February 22, 2012, petitioner returned to her primary care physician who noted her visit to the emergency room the prior week for jaw and arm pain. Pet. Ex. 1 at 198. Petitioner "continues to have left sided facial pain…The numbness that originally was a part of the facial pain picture has improved significantly, and the severity of the pain has decreased. She continues to have constant nagging pain, but it not (sic) overtaking her days. She would like a 2nd opinion from neuro at this point." *Id*.

On March 1, 2012, petitioner presented to Dr. Lett at the Center for EMG & Neurology with a complaint of left facial pain with previous evaluations. Pet. Ex. 7 at 1. Following an examination, Dr. Lett noted that petitioner's "examination today is normal and nonfocal…except it does show left occipital nerve tenderness. Palpation in this area recreates a portion of her left head discomfort." *Id*. Dr. Lett's impression was "1. Left-sided head discomfort for the past two months – possible left occipital neuralgia. 2. Normal neurological examination. 3. Normal MRI bran and normal angiogram. 4. Previous ENT, ophthalmology, cardiology, and neurology evaluations. Recommendation: left occipital nerve block. This was performed with 2 cc bupivacaine and 2 cc Celestone. She noticed some improvement of the discomfort at the time of the injection." *Id*. at 1, 2.

Petitioner presented to Dr. Horton on March 13, 2012. Her symptoms had returned, though initially Dr. Lett's injections had taken a lot of the pain away. Pet. Ex. 9 at 39. Dr. Horton's clinical assessment on that date was "a 52 year old female with left side facial and neck numbness and pain, with a component of occipital neuralgia based on response to injections a couple weeks ago. She may also have a cervical dystonia, as was suspected in 2010." *Id*. at 41. Dr. Horton ordered an MRI of the c-spine. *Id.* at 42.

An MRI of petitioner's cervical spine was performed on March 15, 2012 revealing "1. Circumferential bulging at C5-6 severely flattens the anterior cord. 2. Bulges at C3-4, C4-5 and C6-7 produce mild to moderate cord flattening. 3. Mild anterior subluxation of C7 on T1 is associated with ligament hypertrophy that flattens the posterior cord. 4. Mild subluxation of T3 on T4. 5. Multinodular thyroid gland." Pet. Ex. 9 at 37-38.

On March 19, 2012, petitioner presented to Dr. Loyd complaining of "bilateral neck pain and left fascial (sic) pain." Pet. Ex. 3 at 23. Dr. Loyd noted the "[T]he patient is primarily here for neck pain. Her symptoms occurred in her early 20s. She has always been large breasted. She describes a throbbing aching sensation in neck which is worse while sitting at the computer. Her pain improves when lying flat or taking the pressure off of her neck. She denies any upper extremity symptoms. She also has a history of left-sided facial pain. The pain begans (sic) in the temporal region and spread into the maxillary region. She has been worked up by a cardiologist. She has been placed on acyclovir by an ophthalmologist. She has been diagnosed with trigeminal neuralgia. Lyrica helps a little. Her neurologist thought it maybe associate (sic) with a vaccination reaction." *Id*. Following examination, Dr. Loyd stated "I believe the patient's current pain is most likely associate (sic) with myofascial pain given the size of her breasts and the fact that her symptoms began in her early 20's…with regard to her facial pain she may respond to trigeminal nerve block. She seem to be improving spontaneously so we see how she does in the meantime. Addendum: A new cervical MRI 3/15/12 – severe flattening of the anterior cord at C5-6 without cord compression. Moderate left and mild to moderate right lateral stenosis. The

6

patient elected to return to the pain clinic as needed." *Id*. at 24.

On March 23, 2012, petitioner was referred to a physical therapist for treatment of her "cervicalgia headache." Pet. Ex. 4 at 86. Petitioner was noted to have "a long history of tension in her shoulders and neck and with new onset of left sided facial pain temporal and maxillary…the patient states the first thing in the morning there is just a dull sensation of her pain and it worsens to nearly a 10/10 level by the evening…She is currently working; however, she has decreased her hours and her days of working. She now works 3 days a week and no more than 6 hours at a time." *Id*. Petitioner received physical therapy with good result through June 29, 2012, after which she failed to return. *Id*. at 82.

On April 5, 2012, petitioner returned to Dr. Lett for another left occipital nerve block. Pet. Ex. 7 at 5. Dr. Lett noted that "Lynn had excellent improvement of her left occipital head pain for three weeks after the left occipital nerve block." *Id*. at 3. He also noted that petitioner was "contemplating seeing a chiropractor in the future." *Id*.

The next day, April 6, 2012, petitioner presented to Dr. Arbuckle at Indiana Spine Group after being referred by her PCP for pain management. Pet. Ex. 1 at 216. Dr. Arbuckle stated that petitioner's "neck pain and trapezial and bilateral shoulder pain" was "very likely…secondary to her age-appropriate spondylosis and degenerative disc changes." *Id*. at 217. He also noted that "most of the time, we never do find an actual reason for greater occipital neuralgia." *Id*. He likewise felt her atypical facial pain was secondary to the pain in her neck, shoulders and trapezial region. *Id*.

On April 10, 2012, petitioner returned to Dr. Horton. It was noted that she "had a third set of occipital nerve injections which helped temporarily by subsiding the pain, but it did not help the twitching in the left jaw and temple. Is scheduled to get a cervical epidural injection. Trigger point injections have not helped in the past…She does notice that she turns her head to the right, and has noticed this over the last few years. We also made this observation in the clinic note 5/2/11." Pet. Ex. 9 at 50. Upon examination, Dr. Horton noted that there was "some tenderness to palpation left temporal area, no palpable temporal artery. Comments: Hypertrophy of L cervical paraspinal musculature. Very mild R torticollis, but this may also be more posture related." *Id*. at 52.

Petitioner returned to Dr. Horton for botulinum toxin injection on May 1, 2012. "She did have some reproduction of head tingling with injection in the left levator scapular, and perhaps may target this muscle for future injections." Pet. Ex. 9 at 55. "Can reproduce facial pain by pushing left trapezius area. PT has helped, as well as home traction device. Still has some numbness in left lip." *Id.* at 57.

There are no medical records filed after May 1, 2012 that address any further complaints or treatment for petitioner's facial pain.

7

### III. Discussion.

Under the Vaccine Act, a petitioner may prevail on her claim by proving a "Table" injury, in which causation is presumed or, alternatively, by proving an "off-Table" injury, in which she identifies a causal link between the vaccine and the injury alleged. Because Ms. Henderson does not meet the criteria outlined in the Vaccine Injury Table, 42 C.F.R. § 100.3 (2009), she must produce a preponderance of evidence that a covered vaccine is responsible for her injuries.

A. Legal Standard.

An "off-Table" claim requires that a petitioner establish by preponderant evidence that a covered vaccine caused or significantly aggravated the injury claimed. § 11(c)(1)(C)(ii)(II). Petitioner need not show that the vaccinations were the sole cause, or even the predominant cause, of her condition; showing that the vaccinations were a "substantial factor" and a "but for" cause of her injury are sufficient for recovery. *Shyface v. Sec'y of Health and Human Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999); *see also Pafford v. Sec'y, if Health and Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006) (petitioner must establish that a vaccination was a substantial factor and that harm would not have occurred in the absence of the vaccination).

The Federal Circuit has set forth three factors petitioners must satisfy to prove causation in off-Table cases. *Althen* requires that petitioners provide: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." 418 F.3d 1274, 1278 (Fed. Cir. 2005). All three *Althen* factors must be satisfied to prevail on an off-Table claim.

The medical theory must be a reputable one, although it need only be "legally probable, not medically or scientifically certain." *Knudsen*, 35 F.3d at 548-49. The Supreme Court's opinion in *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, likewise requires that courts determine expert opinions to be reliable before they may be considered as evidence. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. 579, 590 (1993) (citation omitted). The Federal Circuit has stated that a "special master is entitled to require some indicia of reliability to support the assertion of the expert witness." *Moberly ex rel. Moberly v. Sec'y of Health and Human Servs.*, 592 F.3d 1315, 1324 (Fed. Cir. 2010).

B. Evaluating Petitioner's Claim.

Under the Vaccine Act, a petitioner may not be awarded compensation based solely on petitioner's claims alone. Rather, the petition must be supported by either medical records or by the opinion of a competent physicians. § 300aa-13(a)(1). In this case, because the medical records are insufficient to establish entitlement to compensation, a medical opinion must be offered in support.

Petitioner submitted a letter from Dr. Horton, her treating neurologist, dated April 22,

2014 which states: "To Whom It May Concern, Lynn has had a possible neurological reaction to the flu shot in the past." Pet. Ex. 8. Dr. Horton does not describe petitioner's "possible neurological reaction," nor does he specify when the flu shot he is referring to was received. Likewise, Dr. Horton does not indicate why he believes that petitioner's alleged reaction was causal related to a flu vaccine. Dr. Horton has failed to provide any support for this proposition, and does not provide any connection between the influenza vaccination and petitioner's alleged injury. In short, nothing in Dr. Horton's letter or petitioner's record provides a reliable medical theory of vaccine causation.

Ultimately, petitioner has presented neither a sufficient medical opinion nor a plausible medical theory in support of her claim. Having failed to establish any of the *Althen* factors by preponderant evidence, petitioner has not demonstrated that she is entitled to compensation for her illness.

### IV. Conclusion.

Constrained by the requirements as set forth in *Althen,* I find that the petitioner herein has failed to produce preponderant evidence that her influenza vaccination is responsible for her condition, and has thus failed to demonstrate entitlement to compensation. **Her petition is therefore dismissed. The clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

<u>s/Mindy Michaels Roth</u>
Mindy Michaels Roth
Special Master